UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-22425-CIV-DIMITROULEAS

JORGE CONTRERAS,

    Plaintiff,

vs.

AVENTURA LIMOUSINE &
TRANSPORTATION SERVICE, INC.,
and SCOTT TINKLER,

    Defendants.
_____/

## OMNIBUS ORDER GRANTING IN PART AND DENYING IN PART CROSS MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Plaintiff's Motion for Summary Judgment [DE 28], filed herein on April 25, 2014, and Defendants' Motion for Summary Judgment [DE 34], filed herein on May 5, 2014. The Court has carefully considered the Motions [DE 28; DE 34], the Responses [DE 47; DE 51], the Replies [DE 62; DE 64], and the record herein. The Court is otherwise fully advised in the premises.

## I.  BACKGROUND

The parties have provided in their respective Statements of Material Facts [DE 29; DE 35; DE 47 at 11-20; DE 52; DE 62 at 7-10; DE 65] various factual assertions that are supported by the record.[1] In some instances, the parties have not contested their adversaries' assertions.

---

[1] Defendants' Statement of Material Facts in Opposition to Plaintiff's Motion for Partial Summary Judgment [DE 52] does not correspond to the order and paragraph numbering scheme used in Plaintiff's Statement of Undisputed Material Facts in Support of His Motion for Summary Judgment [DE 29]. Defendants, therefore, have violated the Local Rules, *see* Local Rule 56.1(a), and, in so doing, have created an unnecessary complication in the Court's task of comparing the parties' assertions of facts and underlying evidence.
.

1

The Court will deem some of these uncontested factual assertions to be admitted.  *See* S.D. Fla. L.R. 56.1(b); Fed. R. Civ. P. 56(c), (e).  The Court will now set forth the relevant admitted facts.[2]

The parties to this action are Plaintiff Jorge Contreras ("Plaintiff" or "Contreras"), Defendant Aventura Limousine & Transportation Service, Inc. ("ALTS"), and Defendant Scott Tinkler ("Tinkler" and together with ALTS, "Defendants").  [DE 1].  ALTS is a transportation company that transports passengers between two locations for a fee.  [DE 29 ¶ 1; DE 52 ¶ 1].  Tinkler is the President and CEO of ALTS, maintains an office at ALTS's headquarters, and spends at least fifty-five (55) hours per week at the office.  [DE 29 ¶¶ 6-7; DE 52 ¶ 3].

In 2006, ALTS hired Plaintiff as a driver and classified Plaintiff as an "independent operator" or "independent contractor."  [DE 29 ¶¶ 12-13; DE 35 ¶16; DE 47 ¶ 16; DE 52 ¶ 5].  ALTS prepared and issued rate sheets to its drivers and had the final say as to the price to be charged to a client.  [DE 29 ¶ 27; DE 52 ¶ 11].  ALTS would call Plaintiff to indicate the availability of a particular assignment, and Plaintiff could accept or refuse that assignment.  [DE 29 ¶ 29; DE 52 ¶ 12].  ALTS paid Plaintiff only if Plaintiff accepted and performed one of the offered assignments.  [DE 29 ¶ 29; DE 52 ¶ 12].  Plaintiff's last day of providing services for ALTS was May 20, 2013.  [DE 29 ¶ 31; DE 52 ¶ 14].

On July 9, 2013, Plaintiff initiated this action against Defendants.  *See* [DE 1].  Plaintiff asserts two causes of action under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. (the "FSLA"): (1) Count I – Recovery of Overtime Compensation; and (2) Count II – Recovery of Minimum Wage Compensation.  [DE 1 ¶¶ 1, 29-51].  Plaintiff and Defendants have now filed cross Motions for Summary Judgment [DE 28; DE 34].

---

[2] The parties' Statements of Material Facts [DE 29; DE 35; DE 47 at 11-20; DE 52; DE 62 at 7-10; DE 65] include various citations to specific portions of the record.  Any citations herein to the Statements of Material Facts [DE 29; DE 35; DE 47 at 11-20; DE 52; DE 62 at 7-10; DE 65] should be construed as incorporating those citations to the record.

## II. STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears "the stringent burden of establishing the absence of a genuine issue of material fact." *Suave v. Lamberti*, 597 F. Supp. 2d 1312, 1315 (S.D. Fla. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id*. at 325. After the movant has met its burden under Rule 56(c), the burden of production shifts, and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must come forward with "specific facts showing a genuine issue for trial." *Matsushita*, 475 U.S. at 587.

"A fact [or issue] is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (internal quotation marks omitted). Furthermore, "[a]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Southeast*, 492 F. App'x 16, 26 (11th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). "A mere scintilla of evidence in support of

the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party." *Id.* at 26-27 (citing *Anderson*, 477 U.S. at 252). Accordingly, if the moving party shows "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party" then "it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Rich v. Sec'y, Fla. Dept. of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013) (citation omitted). In adjudicating motions for summary judgment, the court "view[s] the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion and all reasonable doubts about the facts [are] resolved in favor of the non-movant." *Gerling Global Reinsurance Corp. of Am. v. Gallagher*, 267 F.3d 1228, 1233-34 (11th Cir. 2001) (internal quotation marks omitted).

## III. DISCUSSION

### A. Plaintiff's Motion for Summary Judgment

Plaintiff seeks summary judgment on five issues. First, Plaintiff asserts that Defendants' affirmative defense as to failure to exhaust administrative remedies fails as a matter of law. Second, Plaintiff asserts that Tinkler is an "employer" under the FLSA. Third, Plaintiff asserts that he was an "employee," and not an "independent contractor," under the FLSA. Fourth, Plaintiff asserts that Defendants' affirmative defense as to the retail commission exemption fails as a matter of law. Finally, Plaintiff asserts that he is entitled to a three-year statute of limitations and to liquidated damages. The Court will consider each argument in turn.

> 1. **Defendants' Affirmative Defense as to Failure to Exhaust Administrative Remedies**

Plaintiff claims that Defendants' thirteenth affirmative defense fails as a matter of law. That defense provides as follows: "Plaintiff's claims should be barred in whole or in part to the extent he has failed to exhaust administrative remedies." [DE 11 at 8]. According to Plaintiff, the FLSA imposes no requirement that administrative remedies be exhausted. Furthermore, Plaintiff maintains that his causes of action arise solely under the FLSA and not under any state law.

In response, Defendants contend that Fla. Stat. § 448.110(6) imposes pre-suit requirements for claims under the Florida Minimum Wage Act (the "FMWA"). Defendants assert that Plaintiff failed to adhere to the pre-suit requirements and, therefore, cannot prevail on any FMWA claims.

The Court agrees with Plaintiff. Defendants' affirmative defense addresses requirements for claims under the FMWA. Plaintiff's Complaint [DE 1], however, does not raise any cause of action under—or otherwise address—the FMWA. Rather, Plaintiff has asserted two counts under the FLSA. Accordingly, Defendants' arguments as to exhaustion requirements are inapposite, and Defendants' thirteenth affirmative defense fails.

> 2. **Whether Tinkler Is an "Employer" Under the FLSA**

Plaintiff asserts that Tinkler, who was a corporate officer for ALTS, is an "employer" under the FLSA. Defendants do not address this issue. For the following reasons, the Court finds that Tinkler is an "employer."

"The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Patel v. Wargo*, 803 F.2d 632, 637-38

(11th Cir. 1986) (internal quotation marks omitted). "In order to qualify as an employer for this purpose, an officer 'must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee.'" *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008) (quoting *Patel*, 803 F.2d at 638). "Operational control includes supervision over significant aspects of an entity's day-to-day functions, including employment matters. [W]hile control need not be continuous, it must be both substantial and related to the company's FLSA obligations." *Ramos v. Guiribitey Cosmetic & Beauty Inst., Inc.*, No. 12–cv–24106–JLK, 2013 WL 6145293, at *2 (S.D. Fla. Nov. 21, 2013) (internal citations and quotation marks omitted).

According to Plaintiff's unrebutted evidence, Tinkler is President, CEO, a shareholder, and a board member of ALTS. *See* [DE 29 ¶ 6; DE 52 ¶ 3]. Tinkler maintains an office at ALTS's headquarters, spends at least fifty-five (55) hours per week working at the office, and runs daily operation meetings with members of ALTS's management team. [DE 29 ¶¶ 7-8; DE 52 ¶ 3]. Thus, the Court finds that Tinkler was involved in ALTS's day-to-day operations and qualifies as an "employer" under the FLSA.

### 3. Whether Plaintiff is an "Employee" or an "Independent Contractor" Under the FLSA

"To determine whether an individual falls into the category of covered 'employee' or exempted 'independent contractor,' courts look to the 'economic reality' of the relationship between the alleged employee and alleged employer and whether that relationship demonstrates dependence." *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013). "This inquiry is not governed by the label put on the relationship by the parties or the contract controlling that relationship, but rather focuses on whether the work done, in its essence, follows

6

the usual path of an employee." *Id.* (internal quotation marks omitted).  Various courts have considered the following list of factors to guide the economic reality inquiry:

> (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
>
> (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
>
> (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
>
> (4) whether the service rendered requires a special skill;
>
> (5) the degree of permanency and duration of the working relationship; and
>
> (6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Id.* at 1311-12.  Nonetheless, these factors are non-exhaustive, and no individual factor is controlling. *Id.* at 1312.  Rather, economic dependence is the overarching determinative factor, and "ultimately, in considering economic dependence, the court focuses on whether an individual is in business for himself or is dependent upon finding employment in the business of others." *Id.* (internal citations and quotation marks omitted).  Although "[a] determination of employment status under the FLSA is a question of law reviewed *de novo*, *see id.* at 1310, summary judgment on the issue may be unwarranted if questions of material fact remain as to the plaintiff's economic dependence.  *See Arias v. Alphine Towing, Inc.*, No. 10–CV–20434–PCH, 2011 WL 11073004, at *9 (S.D. Fla. Feb. 8, 2011).

Focusing on the six factors, Plaintiff contends that he was economically dependent on Defendants.  In support, Plaintiff relies on evidence purportedly exhibiting the following facts:

- Defendants trained him, required him to wear a particular outfit, provided him with ALTS vehicles, supervised him, and handled any disputes with customers;

7

- Defendants entered into contracts with and took reservations from customers, set the price the customers would be charged, and determined when to offer Plaintiff any particular opportunity to transport a customer;

- Plaintiff made no capital investment to complete work for Defendants and, rather, invested only in clothing, telephone/internet services, gas, parking, and tolls;

- Defendants invested in marketing and advertising, reservations systems, dispatch systems, a fleet of vehicles, insurance, permits, vehicle maintenance, and all of the overhead costs;

- Defendants' overall investments in equipment and materials far exceeded Plaintiff's investments;

- Driving limousines or vehicles did not require any special skills on Plaintiff's part;

- Defendants employed Plaintiff for over six years and employed other drivers designated as "independent contractors" for periods ranging from four (4) years to twenty (20) years; and

- ALTS generated at least 80% of its revenue by using vehicles to drive passengers to and from destinations.

Defendants, on the other hand, contend that Plaintiff was not economically dependent. In support, Defendants rely on evidence purportedly exhibiting the following facts:

- When first hired by ALTS, Plaintiff was classified as an "independent contractor" and signed as a representative of his own corporation;

- Plaintiff did not have to travel to ALTS's main office on a daily basis, did not have to check in, and did not drive a vehicle that was subject to consistent GPS monitoring by Defendants;

- Plaintiff's tax returns indicate that Plaintiff purchased two SUV's for a limousine business and deducted business expenses related to those vehicles;

- Plaintiff had the discretion to accept or refuse any individual job for any of Defendants' customers;

- GPS data suggests that Plaintiff was potentially transporting separate customers while billing wait time for ALTS customers; and

- Plaintiff did not receive discipline from ALTS based on Plaintiff's choice to accept or reject any work.

8

Viewing the evidence on the record in the light most favorable to Defendants, the Court finds that there are genuine disputes of fact as to Plaintiff's economic dependence on Defendants. Material disputes remain as to the degree of Plaintiff's investment in equipment for providing limousine/transportation services, the nature and degree of ALTS's control over the manner of Plaintiff's work, and Plaintiff's opportunity for profit or loss depending on his managerial skill. The jury, therefore, must make credibility determinations and findings of fact as to these factual issues.[3] A reasonable jury could find that Plaintiff controlled his own transportation work, invested in tax deductible business items, and earned substantial income outside of the specific tasks that were delegated, required, or controlled by ALTS. Those factual findings would indicate that Plaintiff was in business for himself and was not economically dependent on ALTS. Alternatively, a reasonable jury could find that Plaintiff was primarily dependent upon employment in ALTS's business. Accordingly, the overarching question of economic dependence cannot be resolved at this stage. Thus, the Court cannot enter summary judgment as to whether Plaintiff was an "employee" or an "independent contractor" under the FLSA.

### 4.     Defendants' Affirmative Defense as to the Retail Commission Exemption

Plaintiff claims that Defendants' eleventh affirmative defense fails as a matter of law. That defense provides that Plaintiff's claims are barred by an FLSA exemption that excludes retail or service establishments from liability under certain circumstances. [DE 11 at 8].

Specifically, the FLSA provides the following exemption from liability:

---

[3] For example, there is opaqueness surrounding Plaintiff's tax filings and business deductions. Indeed, when questioned about certain aspects of his tax returns, Plaintiff invoked his rights under the Fifth Amendment. *See* [DE 48-2 at 26-29, 31, 34-35]. Consequently, the jury is free to take adverse inferences against Plaintiff as to relevant facts underlying the economic dependence inquiry. *See United States v. Two Parcels of Real Prop. Located in Russell Cnty., Ala.*, 92 F.3d 1123, 1129 (11th Cir. 1996) ("[T]he trier of fact may take an adverse inference against the parties to a civil action refusing to testify on Fifth Amendment grounds.").

> No employer shall be deemed to have violated subsection (a) [overtime requirement] by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein [i.e., greater than 40 hours], if (1) the regular rate of pay of such employee is in excess of one and one half times the minimum hourly rate applicable to him under section 6, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods and services.

*Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1254 n.2 (11th Cir. 2001) (quoting 29 U.S.C. § 207(i)). "The initial requirement of the [retail commission] exemption is that Defendants be a retail or service establishment." *Ramos*, 2013 WL 6145115, at *3. "A retail or service establishment means an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry." *Schwind v. EW & Assocs., Inc.*, 371 F. Supp. 2d 560, 564 (S.D.N.Y. 2005) (internal quotation marks and footnotes omitted).[4]  "[T]here is no bright line rule for determining whether an establishment is a 'retail or service establishment' and a case-by-case approach is necessary in making this determination." *Id.*  Nevertheless, "[t]he court[s] look[ ] to the DOL regulations for guidance on the characteristics of retail or service establishments," which provide as follows:

> Typically a retail or service establishment is one which sells goods or services to the general public.  It serves the everyday needs of the community in which it is located.  The retail or service establishment performs a function in the business organization of the Nation which is at the very end of the stream of distribution, disposing in small quantities of the products and skills of such organization and does not take part in the manufacturing process.

*Collins v. Horizon Training Centers, L.P.*, No. Civ. A. 3:02CV1310–L, 2003 WL 22388448, at *6 (N.D. Tex. Sept. 30, 2003).  In determining whether an employer is a retail or service establishment, courts should bear in mind that "the FLSA is a remedial statute which is to be construed against the employer, so that the employer must prove its entitlement to an FLSA

---

[4] This definition for "retail or service establishment" is found in 29 C.F.R. § 779.332, which has been repealed but, nonetheless, remains in effect for the purposes of § 207(i). *Schwind*, 371 F. Supp. 2d at 564 n.4.

10

exception by clear and affirmative evidence." *Klinedinst*, 260 F.3d at 1258; *see also Abel v. S. Shuttle Servs., Inc.*, 631 F.3d 1210, 1211 (11th Cir. 2011) ("We construe FLSA exemptions narrowly against the employer.").

According to Plaintiff, ALTS is a transportation company that does not qualify as a "retail or service establishment." Additionally, Plaintiff asserts that more than 25% of ALTS's annual volume sales are "resale," meaning that ALTS does not satisfy the retail commission exemption, even if it qualifies as a "retail or service establishment."

Defendants contend that their transportation services have all the characteristics of a service establishment. Defendants submit that their service of transporting customers from a Point A to a Point B is a service targeted to the everyday needs of the community. According to Defendants, various members of the public—and not just the elite—now utilize limousine services for an assortment of purposes. Defendants, therefore, maintain that ALTS's limousine services are for comfort and convenience. Additionally, ALTS submits evidence that its direct sales to the general public ranged from 77.79% to 81.08% between 2010 and 2013.

The Court finds that ALTS does not qualify as a "retail or service establishment" under the retail commission exemption. The provision of chauffeured limousine and transportation services—outside of generic transportation services such as motor coaches, busses, rail, trolley, and taxi cabs—do not serve the everyday needs of the community. The examples provided by Defendants—e.g., weddings, proms, birthday parties, graduations, anniversaries, private parties, nights out or events, trips to the airport, meetings, or corporate commitments—are not daily events with daily needs for the general public. Moreover, chauffeured transportation to those events does not serve the everyday needs of the community; rather, it is an infrequent occurrence for most people. Thus, given that an FLSA exemption should be construed narrowly against the

employer, the Court cannot conclude that ALTS qualifies as a retail or service establishment. Consequently, the Court holds that Defendants' eleventh affirmative defense—as to the retail commission exemption under 29 U.S.C. § 207(i)—fails as a matter of law.

### 5. Whether Plaintiff Is Entitled to a Three-Year Statute of Limitations or Liquidated Damages

Plaintiff contends that he is entitled to summary judgment on the issue of Defendants' willfulness in violating the FLSA. "The statute of limitations for claims seeking unpaid overtime wages generally is two years, but if the claim is one 'arising out of a willful violation,' another year is added to it." *Alvarez Perez*, 515 F.3d at 1162 (quoting 29 U.S.C. § 255(a)). "To establish that the violation of the Act was willful in order to extend the limitations period, the employee must prove by a preponderance of the evidence that his employer either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was." *Id.* at 1162-63. "'Reckless disregard' has been defined as 'failure to make adequate inquiry into whether conduct is in compliance with the Act.'" *Id.* (quoting 5 C.F.R. § 551.104). "The courts have generally determined that the question of willfulness is one of fact for a jury and generally is not appropriate for summary disposition." *Bryant v. Johnny Kynard Logging, Inc.*, 930 F. Supp. 2d 1272, 1288 (N.D. Ala. 2013); *see also Morrison v. Quality Transports Servs., Inc.*, 474 F. Supp. 2d 1303, 1313 (S.D. Fla. 2007) (collecting cases).

Plaintiff submits that Defendants have misclassified employees as "independent contractors," in violation of the FLSA, for twenty-two (22) years. Plaintiff further submits that Defendants, during that period, never sought legal or expert advice as to whether those "independent contractor" classifications complied with the FLSA. Accordingly, Plaintiff asserts that there are no genuine disputes of fact as to Defendants' willfulness or good faith and that

12

summary judgment is warranted as to the applicability of the three-year statute of limitations and the entitlement to liquidated damages.

In response, Defendants maintain that the evidence does not reflect any willful FLSA violations. Defendants identify evidence that they relied on IRS and Florida Department of Economic Opportunity findings that Defendants' independent contractor model was proper. Defendants, therefore, contend that no reasonable jury, relying on the evidence in the record, could conclude that Defendants acted wilfully as to any purported FLSA violations.

The Court, viewing the evidence in a light most favorable to Defendants, finds that genuine disputes of material fact remain as to whether Defendants acted wilfully. There is evidence on the record that Defendants participated in two audits relating to their business practices: one with the IRS and one with the Florida Department of Economic Opportunity. *See* [DE 35 ¶¶ 17-19]. The jury could credit Defendants' evidence as to reliance on the results of government audits and could reasonably find that Defendants made an adequate inquiry as to FLSA compliance. Consequently, Plaintiff is not entitled to summary judgment on the question of willfulness.

**B.      Defendants' Motion for Summary Judgment**

Defendants seek summary judgment as to the following: (1) Florida law claims; (2) the retail commission exemption; (3) willfulness and liquidated damages; and (4) Plaintiff's entitlement to compensation for various activities. Given the holdings, *supra*, the Court can dispose of the first three issues with little additional discussion. The fourth issue, however, requires a more detailed analysis, as set forth, *infra*.

### 1. Florida Law Claims, the Retail Commission Exemption, and Willfulness and Liquidated Damages

First, Defendants seek summary judgment as to their affirmative defense that Plaintiff failed to exhaust administrative remedies which are prerequisites to claims under Florida law. As addressed in Section III.A.1, *supra*, Plaintiff has not asserted claims under Florida law, and Defendants' thirteenth affirmative defense fails.

Second, Defendants seek summary judgment as to their affirmative defense under the retail commission exemption under 29 U.S.C. § 207(i). As addressed in Section III.A.4, *supra*, the Court finds that ALTS is not a "retail or service establishment" under that exemption, and Defendants' eleventh affirmative defense fails.

Third, Defendants seek summary judgment as to Plaintiff's claim of willfulness. As addressed in Section III.A.5, *supra*, the Court, viewing the evidence in the light most favorable to Defendants, found that genuine disputes of material fact remain as to that issue. Now viewing the evidence in the light most favorable to Plaintiff, the Court similarly finds that genuine disputes of fact remain as to that issue. A reasonable jury could find that Defendants' reliance on the IRS and Florida Department of Economic Opportunity audits did not constitute a sufficient inquiry and, therefore, that Defendants acted with reckless disregard as to FLSA compliance. Therefore, Defendants are not entitled to summary judgment as to the willfulness issue.

### 2. Plaintiff's Entitlement to Compensation for Various Types of Activities

Defendants seek summary judgment on the issue of Plaintiff's entitlement to compensation for commute time; time spent at home; *de minimis* time for checking emails, washing his car, and calling to check his schedule; and down time or "on call" time during which Plaintiff waited at specific locations between jobs. Although Defendants combine these arguments, the Court identifies distinct issues requiring separate discussion.

> a.   *Commute Time and Wait Time Spent at Home*

Plaintiff concedes that he is not seeking compensation for the time spent commuting from his home to his first work location or from his last work location to his home. *See* [DE 47 at 35-38]. Moreover, Plaintiff concedes that he is not seeking compensation for any wait time or "on call" time spent at home. *See* [*id.*]. Accordingly, such time will not be compensable in this action.

> b.   *De Minimis Time for Checking Emails, Car Washing, and Checking Schedule*

Defendants assert that certain minor tasks—such as checking schedules and washing vehicles—were *de minimis* and, therefore, not compensable. The Court, however, finds that Defendants are not entitled to summary judgment on this issue.

Summary judgment is unwarranted on the compensability of specific tasks where "there is a factual question as to whether the time spent doing these activities is *de minimus*." *Powell v. Carey Int'l., Inc.*, 514 F. Supp. 2d 1302, 1321 (S.D. Fla. 2007). For example, there may genuine disputes of fact as to "how much time is spent calling dispatch . . . and what is the regularity with which [the] [p]laintiffs are required to do it." *Id.* at 1322.

Defendants have not demonstrated the absence of a genuine dispute of material fact as to the aggregate time that Plaintiff worked on purportedly *de minimis* tasks. A reasonable jury could conclude that Plaintiff's time checking emails, checking his schedule, and/or washing his car is compensable under the FLSA when aggregated over the relevant employment period. Thus, Defendants are not entitled to summary judgment on this issue.

      *c.*      *Plaintiff's "On Call" Time*

Defendants contend that, as a matter of law, Plaintiff is not entitled to compensation for time spent "on call" between jobs. For the following reasons, summary judgment is not warranted on this issue.

The FLSA does not provide a definition of "work," so "the task of giving that term meaning has fallen to the courts." *Anderson v. Perdue Farms*, 604 F.Supp.2d 1339, 1347 (M.D. Ala. 2009). Under the "waiting to be engaged" or "on call" doctrine, waiting is compensable if spent primarily for the benefit of the employer, and that inquiry depends on all the circumstances. *Powell*, 514 F. Supp. 2d at 1322; *see also Armour & Co. v. Wantock*, 323 U.S. 126 (1944); *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). Moreover, "[t]he degree of restrictions placed on an employee who is 'on call' usually determines whether such time is compensable"; generally, the inquiry is "whether the employee is free to use such 'on call' time for his own personal activities." *Powell*, 513 F. Supp. 2d at 1323 (citing *Birdwell v. City of Gadsden, Ala.*, 970 F.2d 802, 808–10 (11th Cir. 1992)). In making that determination, courts may consider the following non-exhaustive list of factors:

> (1) whether there was an on-premises living requirement; (2) whether there were excessive geographical restrictions on employee's movements; (3) whether the frequency of calls was unduly restrictive; (4) whether a fixed time limit for response was unduly restrictive; (5) whether the on-call employee could easily trade on-call responsibilities; (6) whether use of a pager could ease restrictions; and (7) whether the employee had actually engaged in personal activities during call-in time . . . .

*Id.* (citing *Lurvey v. Metro. Dade Cnty.*, 870 F. Supp. 1570, 1576 (S.D. Fla. 1994)). Additionally, "[d]etermining whether time is compensable under the FLSA 'involves scrutiny and construction of the agreements between the particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and

16

its relation to the waiting time, and all of the surrounding circumstances.'" *Barraza v. Pardo*, Case No. 12–cv–23868–JLK, 2013 WL 6252210, at *3 (S.D. Fla. Dec. 4, 2013) (quoting *Skidmore*, 323 U.S. at 137). Finally, "the determination of whether time spent waiting is compensable is highly factual," and summary judgment may be unwarranted if the relevant facts are highly disputed.

Here, genuine disputes remain as to the key facts underlying the issue of compensation for "on call" time. The parties dispute the facts surrounding Plaintiff's exact obligations, conduct, and whereabouts during the relevant time periods for which he seeks compensation. Plaintiff submits evidence that ALTS required drivers to stay in a particular area rather than going about their personal business and, consequently, that he was repeatedly required to remain available at particular locations. *See* [DE 35-7 at 123-127; DE 47 ¶ 21; DE 47-6 at 6-7; 47-11 at 3]. Hence, questions remain as to the scope of geographic restrictions on Plaintiff's movements, the frequency of calls or jobs Plaintiff received during "on call" periods, the length of "on call" periods at specific locations, and Plaintiff's actual engagement in personal activities during "on call" periods. A reasonable jury could make factual findings confirming that Plaintiff was not free to engage in personal activities during certain "on call" times, in which case Plaintiff could be entitled to compensation. Accordingly, the Court, viewing the evidence in a light most favorable to Plaintiff, concludes that there are genuine disputes of fact precluding summary judgment on this issue.

## IV.   CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Summary Judgment [DE 28] is hereby **GRANTED IN PART AND DENIED IN PART**;

2. Defendants' eleventh affirmative defense, as to the retail commission exemption under 29 U.S.C. § 207(i), fails as a matter of law;

3. Tinkler is an "employer" under the FLSA;

4. Defendants' thirteenth affirmative defense, as to failure to exhaust administrative remedies prior to bringing Florida state law causes of action, fails as a matter of law;

5. Defendants' Motion for Summary Judgment [DE 34] is hereby **GRANTED IN PART AND DENIED IN PART**; and

6. Plaintiff is not entitled to any compensation for wait time spent at his home or for commute time to and from his home.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 30th day of June, 2014.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies provided to:

Counsel of record