UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.  13-22425-CV-WPD

JORGE CONTRERAS,

       Plaintiff,

v.

AVENTURA LIMOUSINE &
TRANSPORTATION SERVICE, INC.,
and SCOTT TINKLER,

       Defendants.

_____/

### RENEWED JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND TO DISMISS CASE WITH PREJUDICE

Plaintiff, JORGE CONTRERAS, ("Plaintiff") and Defendants, AVENTURA LIMOUSINE & TRANSPORTATION SERVICE, INC., ("ALTS"), a Florida corporation; and SCOTT TINKLER, ("TINKLER"); ("Defendants"), by and through their undersigned counsel, hereby file this Renewed Joint Motion for Approval of Settlement Agreement and to Dismiss Case with Prejudice (with the Court retaining jurisdiction to enforce the settlement), and state the following:

1.     Plaintiff filed the instant lawsuit alleging that Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), by allegedly failing to pay him minimum wage compensation and overtime compensation.

2.     Defendants in the instant case deny liability towards Plaintiff and contend that the position he held was as an independent contractor or, if not, was exempt.

1

3.      This action was tried to a jury, which resulted in a verdict in favor of JORGE CONTRERAS and final judgment of $208,094.00, plus interest.   Additionally, the judgment reserved jurisdiction to award the Plaintiff attorneys' fees and costs.

4.      Following the verdict, the Defendants, ALTS and TINKLER filed post-trial motions in the Contreras Action contesting the verdict and final judgment and alternatively moved for a remittitur.

5.      Due to the uncertainties and costs of continued litigation including certain potential appellate proceedings, coupled with the unsettled status of the law, the parties decided to amicably settle this matter.

6.      The two circumstances in which FLSA claims may be compromised are claims that are: 1) supervised by the Secretary of Labor, pursuant to 29 U.S.C. § 216(c); and 2) when a court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b).   *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982). Before a court may approve a compromised settlement, it must scrutinize the settlement to determine whether it is a fair and reasonable resolution of a bona fide dispute.   *See id.* at 1354-55.   If the settlement meets the afore-mentioned criteria under *Lynn's Food Stores, Inc.*, the Court should approve the settlement in order to promote the policy of encouraging settlement of litigation.   *Id.*; *see also Sneed v. Sneed's Shipbuilding, Inc.,* 545 F.2d 537, 539 (5th Cir. 1977).

7.      The parties respectfully submit that the proposed settlement is fair and reasonable, and satisfies the criteria for approval under § 216(b) of the FLSA.   The agreement was achieved during lengthy negotiations between the parties conducted by experienced counsel, and resolves all outstanding legal issues between them.

8.      Accordingly, the parties agree that the confidential settlement terms represent a fair and equitable resolution of this matter including attorneys' fees and costs, and resolves all disputes between them, even though the parties dispute liability to each other. A copy of the Agreement is attached hereto as Exhibit "A".

9.      If approved by the Court, the agreement would make settlement payments available to Plaintiff and his counsel in an amount representing a compromise between the amount awarded to Plaintiff and the amount that Defendants believe appropriate.

**WHEREFORE**, the parties respectfully request that the Court enter an Order: (1) approving the terms of the settlement of Plaintiff's claims; (2) dismissing this action with prejudice; (3) retaining jurisdiction to enforce the provisions of the settlement; and, (4) granting the parties such further relief as the Court deems just and appropriate.

Dated: November 5, 2014.

Respectfully submitted,

| | |
|---|---|
| Kim Vaughan Lerner LLP | Law Offices of Michael A. Pancier, P.A. |
| **Attorneys for Plaintiff** | **Attorneys for Defendants** |
| One Financial Plaza | 9000 Sheridan Street, Suite 93 |
| 100 SE Third Avenue, Suite 2001 | Pembroke Pines, FL 33024 |
| Fort Lauderdale, Florida 33394 | TEL: (954) 862-2217 |
| Telephone: (954) 527-1115 | FAX: (954) 862-2287 |
| Facsimile: (954) 527-1116 | mpancier@pancierlaw.com |
| blerner@kvllaw.com | |
| | |
| /s/ Brian L. Lerner | /s/ Michael A. Pancier, Esq. |
| Brian L. Lerner, P.A. | Michael A. Pancier, Esq. |
| Fla. Bar No. 177202 | Fla. Bar No. 958484 |
| Robert C. L. Vaughan, P.A. | |
| Fla. Bar No. 130095 | |

# EXHIBIT "A"

## SETTLEMENT, WAIVER, AND GENERAL RELEASE AGREEMENT

This Settlement, Waiver, and General Release Agreement ("Agreement"), dated October 27, 2014, is made by and among JORGE CONTRERAS and ROBSON COELHO (hereinafter collectively referred to as "Plaintiffs"), and AVENTURA LIMOUSINE & TRANSPORTATION SERVICE, INC. ("ALTS"), SCOTT TINKLER, in his individual and official capacity ("TINKLER"), NEIL GOODMAN, in his individual and official capacity ("GOODMAN"), AVENTURA LIMO & BUS SERVICE, INC. ("ALBS"), and AVENTURA WORLDWIDE TRANSPORTATION SERVICE, INC. ("AWTS") (hereinafter collectively referred to as "the Company") (the Plaintiffs and the Company hereinafter collectively referred to as the "Parties").

### RECITALS

**WHEREAS,** JORGE CONTRERAS filed an action against ALTS and TINKLER in the United States District Court for the Southern District of Florida alleging violations of the Fair Labor Standards Act, *sub nom Jorge Contreras v. Aventura Limousine & Transportation Service, Inc., and Scott Tinkler*, case number 13-cv-22425-WPD (the "Contreras Action");

**WHEREAS,** ROBSON COELHO filed an action against ALTS in the United States District Court for the Southern District of Florida alleging violations of the Fair Labor Standards Act, *sub nom Robson Coelho v. Aventura Limousine & transportation Service, Inc.*, case number 10-23228-Civ-COOKE/TORRES, which was compelled to arbitration and which is pending before the American Arbitration Association under Case Number 32-20-1100-0122 (the "Coelho Action");

**WHEREAS,** the Contreras Action was tried to a jury, which resulted in a verdict in favor of JORGE CONTRERAS and final judgment of $208,094.00, plus interest;

**WHEREAS,** ALTS and TINKLER filed post-trial motions in the Contreras Action contesting the verdict and final judgment and anticipate appellate proceedings following rulings on the post-trial motions;

**WHEREAS,** the Coelho Action is currently scheduled for a final arbitral hearing starting on January 26, 2015;

**WHEREAS,** the Company denies all liability to the Plaintiffs;

**WHEREAS,** as part of the Parties' settlement discussions that led to this Agreement, the Plaintiffs, through their counsel, were provided with financial and other information as to the Company; and

**WHEREAS**, for purposes of avoiding further costly litigation and in order to reach an amicable resolution of the claims and disputes by and among the Parties, the Parties desire to compromise, fully and finally settle, and fully release any and all actual or potential claims including attorneys' fees and costs, known and unknown, that the Parties may have against each other, including without limitation, any claims that were raised or which could have been raised in the Contreras Action, and the Coelho Action or in connection with any of the contractual relationships between the Plaintiffs and the Company.

Page **1** of **28**



**NOW, THEREFORE,** in consideration of the mutual promises and agreements set out herein, the receipt of which is hereby acknowledged, the Parties agree as follows:

1.     **Dismissal of Lawsuits**.

        a.     Within five business days of signing this Agreement by JORGE CONTRERAS and ROBSON COELHO and delivery to the Company's counsel of a fully executed copy of this Agreement (which delivery may be done by e-mail), the Company's counsel agrees to advise the American Arbitration Association and the federal courts of the resolution of the aforesaid matters and shall file the following:

            i.     In the Contreras Action, a Joint Motion for Approval of Settlement Agreement with the federal district court (although JORGE CONTRERAS's counsel may immediately file a notice of settlement in compliance with the court's Notice to Parties in FLSA Cases before the filing of the Joint Motion); and

            ii.     In the Coelho Action, a Joint Notice of Settlement with the American Arbitration Association (which notice shall also indicate that all outstanding costs of the American Arbitration Association shall be paid by the Company and which notice shall request the dismissal or closure of the arbitration), a Joint Motion to Lift Stay with the federal district court, and a Joint Motion for Approval of Settlement Agreement and to Dismiss Case with Prejudice with the federal district court.

        b.     In the Contreras Action and the Coelho Action, the motions filed with the courts will include a provision that the federal district courts shall maintain jurisdiction to enforce the terms of this Agreement, along with a proposed Order.

        c.     To the extent there is no Event of Default and upon clearance of the last payment required under this Agreement, JORGE CONTRERAS shall file a satisfaction of judgment in the Contreras Action.

2.     **Consideration Paid to Plaintiffs and Their Attorneys**. The Company will pay Plaintiffs a total of Six Hundred Seventy-Six Thousand Two Hundred Twenty-Three Dollars and Seventy-Seven Cents ($676,223.77) (of which $353,456.45 shall be designated as attorneys' fees and costs payable to Kim Vaughan Lerner LLP for the Contreras Action and $39,018.26 shall be designated as attorneys' fees and costs payable to Kim Vaughan Lerner LLP for the Coelho Action) in the manner provided below and in the attached Addenda.

        a.     **Payments to JORGE CONTRERAS and ROBSON COELHO**. No later than sixty calendar days from the date the last court approves this Agreement in the Contreras Action and the Coelho Action, JORGE CONTRERAS and ROBSON COELHO shall receive from the Company an initial payment in the amount listed on the payment schedules attached hereto and incorporated into this Agreement as Addendum 1 (JORGE CONTRERAS) and Addendum 2 (ROBSON COELHO). This initial payment is identified on the Addenda as the "Down Payment." No later than the first business day of the month immediately following the deadline to provide the Down Payment and continuing on the first business day of each successive month, the Company will pay JORGE CONTRERAS and ROBSON COELHO in equal monthly installment

<hr />

initials



payments over a term of five years pursuant to the payment schedules attached hereto and incorporated into this Agreement as Addendum 1 (JORGE CONTRERAS) and Addendum 2 (ROBSON COELHO), subject to adjustment to account for any reduction resulting from the exercise of the prepayment option detailed in paragraph 2.d. below.  Payments made to JORGE CONTRERAS and ROBSON COELHO shall be made by direct deposit, with JORGE CONTRERAS and ROBSON COELHO providing a completed direct deposit form and voided check to facilitate the Company setting up the direct deposit.

        b.    **Payments to Kim Vaughan Lerner LLP**.  Commencing within five business days of the last court approving this Agreement in the Contreras Action and the Coelho Action, the Company will pay Kim Vaughan Lerner LLP in equal monthly installment payments over a term of five years pursuant to the payment schedules attached hereto and incorporated into this Agreement as Addendum 3, subject to adjustment to account for any reduction resulting from the exercise of the prepayment option detailed in paragraph 2.d. below.  Other than the first payment, which must be received by the date stated above, all of the remaining payments shall be received by Kim Vaughan Lerner LLP no later the last business day of each month immediately following the deadline to receive the first payment.  Payments made to Kim Vaughan Lerner LLP shall be made by check and delivered to Kim Vaughan Lerner LLP, Attn: Brian L. Lerner, 100 SE Third Avenue, Suite 2001, Fort Lauderdale, Florida 33394.  The Company represents and warrants that all payments being made to Kim Vaughan Lerner LLP in no way shall be construed as forming or creating an attorney-client relationship as between the Company and Kim Vaughan Lerner LLP or creating a conflict of interest that would preclude Kim Vaughan Lerner LLP from representing Plaintiffs; rather, the payments being provided by the Company are being made in accordance with Plaintiffs' demand for attorneys' fees and costs as provided for under 29 U.S.C. § 216(b) and case law providing for the payment of a plaintiff's attorneys' fees and costs.

        c.    **Primary Obligors, Jointly and Severally Obligated**.  Notwithstanding that any provisions in this Agreement refer to the Company (which as defined above includes not only ALTS but also TINKLER, GOODMAN, ALBS, and AWTS) as making the payments contemplated under this Agreement, ALTS, TINKLER, GOODMAN, ALBS, and AWTS agree and acknowledge that ALTS, TINKLER, GOODMAN, and AWTS are jointly and severally obligated (e.g., they are all primary obligors) under this Agreement, and further agree and acknowledge that ALBS is jointly and severally obligated (e.g., it is a primary obligor) under this Agreement but subject to the limitations provided in paragraph 12 below).

        d.    **Prepayment Option and Reduction of Settlement Amount**.  The Parties agree that the Company may prepay portions of the total settlement amount, as follows:  If the Plaintiffs and Kim Vaughan Lerner LLP receive up to an additional $52,044.44 at any time within the first twenty-four months from the date of this Agreement (that is, a total amount of up to $410,780.23, not including any late fees), the Plaintiffs and Kim Vaughan Lerner LLP shall be deemed to have agreed to reduce the total settlement amount listed above by such prepayment amounts, that is additional prepayments up to $52,044.44.  Such prepayment(s) will result in reducing the total indebtedness under this Agreement dollar for dollar down to the amount of Six Hundred Twenty-Four Thousand One Hundred Seventy-Nine Dollars and Thirty-Three Cents ($624,179.33), along with corresponding changes to the remaining payment schedule as set forth in the attached Addenda.  The examples in the attached Addenda reflect the prepayment allocations

initials


for Plaintiffs and Kim Vaughan Lerner LLP in the event the Company makes a prepayment to each of the Plaintiffs and Kim Vaughan Lerner LLP for the maximum prepayment amount $52,044.44. If a lesser prepayment amount is provided by the Company, Plaintiffs and/or Kim Vaughan Lerner LLP shall provide an updated Addenda within fifteen business days after the end of the twenty-fourth month reflecting the payment schedule for the remainder of the term.

        e.    **Payment Default and Late Fees**.  In the event a monthly settlement payment is not received by any of the Plaintiffs and/or Kim Vaughan Lerner LLP by the date due, but before an Event of Default may be declared for non-payment, the Company shall have five calendar days from delivery of an e-mail or facsimile notice to the Company' counsel, Brian Gart (bgart@bergersingerman.com or 954.523.2872) and Michael Pancier (mpancier@pancierlaw.com or 954.862.2287), and e-mail notice to the Company at ron@aventuralimo.com and scott@aventuralimo.com to cure the non-payment. The Company authorizes Plaintiffs' attorneys to contact the Company directly for the sole and limited purpose of providing the Company with notice of a non-payment. Similarly, the Company authorizes the Company's counsel, Messrs. Gart and Pancier, to permit Plaintiffs' attorneys to contact the Company for the sole and limited purpose of providing the Company with notice of a non-payment.  Written notice to the Company will be effective as of the date delivered to the Company or the Company's counsel (whichever occurs first).  Rejection or other refusal by the addressee to accept or the inability to deliver because of a changed e-mail address or facsimile number of which no written notice was given shall be deemed to be the delivery and receipt of the notice sent.  Any notices attempted to be sent to both the Company and its counsel listed above shall be deemed delivered upon the date that such notice is delivered to the Company's counsel even if the Company does not actually receive its copy of the notice.  To cure the default for non-payment, the monthly payment then due *along with* a fixed "Late Fee" of $75.00 must be received no later than five calendar days after delivery of the written notice.  Failure of the Company to provide the payment and the Late Fee within five calendar days after delivery of written notice shall constitute an Event of Default.

        f.    **Event of Default**.  In case of the happening of any of the following events:

        i.    any representation or warranty made by the Company in this Agreement shall prove to have been false or misleading in any respect unless such representation or warranty is as to information concerning the financial condition of the Company or performance of this Agreement the breach of which can be cured by (1) reporting or access to financial information required under this Agreement, or (2) such further disclosures, access, or reporting with respect to those representations and warranties set forth in paragraph 10(a) through (d) of this Agreement; or

        ii.    JORGE CONTRERAS, ROBSON COELHO, and/or Kim Vaughan Lerner LLP fail to receive from the Company the payments required by the dates specified in this Agreement provided that such failure has not been cured within five calendar days after delivery to the Company of written notice thereof as set forth in paragraph 2.f.; or

        iii.    the Company fails to observe or perform any covenant, condition, or agreement required to be observed or performed by him or it under this Agreement, including any breach of any representation or warranty made by the Company in this Agreement; or

---

initials 



iv.      an involuntary proceeding shall be commenced or an involuntary petition shall be filed in a court of competent jurisdiction seeking (1) relief in respect of any of the Company, or of a substantial part of the property or assets of any of the Company, under Title 11 of the United States Code, as now constituted or hereafter amended, or any other federal, state or foreign bankruptcy, insolvency, receivership or similar law, (2) the appointment of a receiver, trustee, custodian, sequestrator, conservator, or similar official for the Company or for a substantial part of the property or assets of any of the Company, or (3) the winding-up or liquidation of any of the Company; or

v.      the Company shall (1) voluntarily commence any proceeding or file any petition seeking relief under Title 11 of the United States Code, as now constituted or hereafter amended, or any other federal, state or foreign bankruptcy, insolvency, receivership or similar law, (2) consent to the institution of, or fail to contest in a timely and appropriate manner, any proceeding or the filing of any petition described in the immediate preceding paragraph above, (3) apply for or consent to the appointment of a receiver, trustee, custodian, sequestrator, conservator, or similar official for any of the Company or for a substantial part of the property or assets of any of the Company, (4) file an answer admitting the material allegations of a petition filed against it in any such proceeding, (5) make a general assignment for the benefit of creditors, (6) become unable, admit in writing their inability, or fail generally to pay their debts as they become due, or (7) take any action for the purpose of effecting any of the foregoing; or

vi.      one or more judgments for the payment of money in the amount of $100,000 or more shall be rendered against the Company and, in each case, the same shall (1) remain undischarged or otherwise unsettled or unsatisfied for a period of thirty consecutive calendar days during which execution shall not be effectively stayed, or any action shall be legally taken by a judgment creditor to levy upon assets or properties of any of the Company to enforce any such judgment, or (2) have resulted in or be reasonably likely to result in a material impairment of the ability of any of the Company to perform any of their obligations under this Agreement, or a material impairment of the rights of or benefits available to JORGE CONTRERAS, ROBSON COELHO, and/or Kim Vaughan Lerner LLP under this Agreement; or

vii.      the Company shall have defaulted under, or there shall exist an event of default with respect to, any indenture, loan agreement, or other credit agreement relating to an indebtedness of $100,000 or more to which the Company is a party and that is not cured within thirty calendar days or such debt is accelerated prior to its due date;

viii.      ALTS, ALBS (subject to the limitations contained in paragraph 12), and/or AWTS is sold or otherwise has leased, transferred, or assigned any of its/their assets, tangible or intangible, with an aggregate value greater than $100,000, other than the sub-leasing of vehicles and limousine permits as identified in the ALTS Restructuring Plan as of August 31, 2014, and the ALTS Reorganization Worksheet as of August 31, 2014, the proceeds of which the Company fails to use to pay the Down Payment and/or otherwise toward satisfying the then remaining indebtedness due under this Agreement; provided further, however, that ALTS, ALBS and AWTS shall be allowed to enter into purchase money financing or other financing arrangements in order to acquire additional vehicles or equipment in the ordinary course of business (and encumber same in exchange for such financing); or

_____
initials

Page 5 of 28



    ix.     TINKLER and/or GOODMAN sell, lease, transfer, assign, or encumber, lien, or pledge any shares, stockholder interests, and/or membership interests they have in any entity related to or affiliated with the Company, including and not limited to ALTS, ALBS, AWTS, Aventura Limo Service, Inc., and Aventura Limousine LLC, the proceeds of which the Company fails to use to pay the Down Payment and otherwise satisfy the then remaining indebtedness due under this Agreement;, provided further, however, that TINKLER and/or GOODMAN may sell, transfer, assign, encumber, lien or pledge any ownership interests they may have in any of the entities identified as part of a sale, merger, joint venture, or other business combination so long as the successor or surviving entities remain obligated under this Agreement to the same extent as the primary obligors currently are under this Agreement;

then an event of default ("Event of Default") shall have occurred and the amount then outstanding, shall become forthwith due and payable in full, without presentment, demand, protest, or any other notice of any kind, all of which are hereby expressly waived by the Company, anything contained herein to the contrary notwithstanding.

       In the case of an Event of Default, the Company understands and agrees that JORGE CONTRERAS may proceed immediately with execution forthwith on the final judgment in the Contreras Action. In the case of an Event of Default, the Company further understands and agrees that JORGE CONTRERAS and/or Kim Vaughan Lerner LLP shall be entitled to the entry of an amended final judgment and/or final judgment against the Company, jointly and severally, in the Contreras Action, for the unpaid balance of Addenda 1 and/or 3 plus reasonable attorneys' fees, costs, and expenses necessarily incurred to obtain the amended final judgment and/or final judgment upon which execution shall issue forthwith upon submission of an affidavit of indebtedness to the federal district court; and in doing so, this Agreement, or a copy hereof shall be a sufficient warrant when accompanied by the affidavit of indebtedness. The federal district court shall not hold off, stay, or otherwise delay the entry of the amended final judgment and/or final judgment. The Company understands and agrees that an amended final judgment shall not be required by JORGE CONTRERAS to the extent the unpaid balance of Addenda 1 is less than the amount of the current final judgment.

       In the case of an Event of Default, the Company understands and agrees that ROBSON COELHO and/or Kim Vaughan Lerner LLP may proceed immediately with obtaining a final judgment against the Company, jointly and severally, from the federal district court in the Coelho Action, for the unpaid balance of Addenda 2 and/or 3 plus reasonable attorneys' fees, costs, and expenses necessarily incurred to obtain the final judgment upon which execution shall issue forthwith upon submission of an affidavit of indebtedness to the federal district court; and in doing so, this Agreement, or a copy hereof shall be a sufficient warrant when accompanied by the affidavit of indebtedness. The federal district court shall not hold off, stay, or otherwise delay the entry of the final judgment.

    3.    **Tax Forms and Liability**.   Contemporaneous with his execution of this Agreement, Plaintiffs shall provide to the Company executed IRS Form W-4s and W-9s with their current addresses as well as direct deposit forms and Kim Vaughan Lerner LLP shall provide to the Company an executed IRS Form W-9. In the regular course of business, the Company also shall issue the appropriate tax forms to Plaintiffs (IRS Form W-2s for wages and IRS Form 1099s for liquidated damages) and Kim Vaughan Lerner LLP (IRS Form 1099s for attorneys' fees and

---

initials



costs) in connection with the payments made under this Agreement. The Company makes no representations regarding the tax obligations that may arise to Plaintiffs and Kim Vaughan Lerner LLP from the settlement payments, other than to warrant and represent, in the case of Plaintiffs, that the Company will make all of the required withholdings as provided in the IRS Form W-4s submitted by Plaintiffs and remit all of the withholdings (including the Company's portion of employment taxes) to the IRS.

4.   **Full Release by the Parties**.

a.      Plaintiffs and Brown J Corp, for themselves and their heirs, executors, administrators, successors, personal representatives, or assigns (collectively "First Party"), do hereby remise, release, acquit, satisfy, and forever discharge the Company and all of their respective parents, subsidiaries, affiliates, divisions, joint venturers, related corporations, successors, or assigns, and all of their respective shareholders, attorneys, officers, directors, agents, and employees, past and present, whether as individuals or in their official capacity, and all of their heirs, executors, administrators, successors, personal representatives, or assigns (collectively "Second Party"), of and from all claims, causes of action, demands, contracts, agreements, promises, liabilities of any kind whatsoever, upon any legal or equitable theory, whether contractual, tortious, common law, statutory, federal, state, local, or otherwise. This release includes but is not limited the following:  the Fair Labor Standards Act; Title VII of the Civil Rights Act of 1964, as amended; the Equal Pay Act; the Americans with Disabilities Act of 1990; the Age Discrimination in Employment Act; the Older Workers Benefits Protection Act; the Employee Retirement Income Security Act of 1974; the National Labor Relations Act; the Rehabilitation Act of 1973; the Florida Whistleblower Protection Act (Sections 448.101- 448.105, Florida Statutes); § 448.205, Florida Statutes, and/or any other federal, state or local laws, ordinances, or regulations, including but not limited to those prohibiting employment discrimination, such as the Florida Civil Rights Act of 1992; and Chapter 11A of the Miami- Dade County Code (dealing with employment discrimination); wrongful discharge; breach of any express contract of employment; breach of any implied contract of employment; negligent or intentional infliction of emotional distress; defamation or slander; assault; battery; false imprisonment; invasion of privacy; civil theft; fraud; discrimination based on age, sex, race, disability, marital status, religion or national origin; sexual harassment; breach of any implied covenant of good faith and fair dealing; unpaid compensation of any nature including, without limitation, wages, overtime compensation, benefits, liquidated damages, punitive damages, or other remuneration; attorneys' fees, costs, or disbursements; or for any other damages, breach of duty, or obligation of any kind or description whether arising in law or equity, which First Party ever had, now has, or hereafter can, shall, or may have against Second Party, known, unknown, foreseen, or unforeseen, from the beginning of the world to the date of this Agreement. In short, this release paragraph is intended to cover any and all claims that First Party may have against the Second Party with no "carve outs" or exceptions.

b.      **Older Workers Benefit Protection Act**.  In compliance with the Older Workers Benefit Protection Act (P.L. 101-433), Plaintiffs hereby acknowledge, and as to paragraph iii below the Company agrees, as follows:

i.      Plaintiffs fully understand this Agreement;

_____
initials



ii.      this Agreement specifically applies to any rights or claims Plaintiffs may have against Second Party under the federal Age Discrimination in Employment Act of 1967, as amended;

iii.     this Agreement does not purport to waive rights or claims that may arise from acts or events occurring after the date of this Agreement;

iv.     the consideration provided for in this Agreement and the provisions of this paragraph are in addition to that to which Plaintiffs are already entitled;

v.      Plaintiffs have been advised of their right to consult with an attorney prior to signing this Agreement and that they have been given a period of twenty-one days within which to consider whether to sign this Agreement; and

vi.     This Agreement shall be revocable by any of the Plaintiffs for the seven day period following his execution of this Agreement.  Accordingly, this Agreement shall not become effective or enforceable with respect to Plaintiffs until the expiration of this seven day revocation period.

c.      Second Party does hereby remise, release, acquit, satisfy, and forever discharge First Party of and from all claims, causes of action, demands, contracts, agreements, promises, liabilities of any kind whatsoever, upon any legal or equitable theory, whether contractual, tortious, common law, statutory, federal, state, local, or otherwise, which Second Party ever had, now has, or hereafter can, shall, or may have against First Party, known, unknown, foreseen, or unforeseen, from the beginning of the world to the date of this Agreement.  This release also includes but is not limited to any and all claims or causes of action arising out of or relating to any violations of federal, state, or local laws pertaining to infringement or dilution of trademarks, service marks, or trade names, tortious interference with contractual or business relationships, or breach of any independent contractor application and agreement.  This release paragraph is intended to cover any and all claims that Second Party may have against the First Party with no "carve outs" or exceptions.

d.      The Parties agree that the release of claims contained in this Agreement do not release the Parties from any of the obligations to each other as set forth in this Agreement.  This Agreement in no way releases, discharges, or waives any claims arising from any breach of this Agreement, or that may arise from future transactions between the Parties.

5.      **No Admission of Liability**.   The Company expressly denies any liability whatsoever, and the Parties agree that this Agreement is tendered to resolve all issues currently pending.  Further, other than the representations and warranties provided in this Agreement, the Parties agree that entering into this Agreement shall not be construed as admission of any violation of contract, duty, law, ordinance, regulation or any other theory of relief whether federal, state or local.  Neither this Agreement, nor any act performed or document executed pursuant to or in furtherance of this Agreement may be deemed to be, or may be used as, an admission of, or evidence of the validity of any released claim, or of any wrongdoing in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal, other than in such proceedings as may be necessary to consummate or enforce this Agreement.  The Parties and Kim

---

initials

Page 8 of 28



Vaughan Lerner LLP, however, may file this Agreement in any action that may be brought against them in order to support a claim, defense, counterclaim or to enter a final judgment or amended final judgment.

6. **Intention to Avoid Dispute**. Each party has entered into this Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience and expense.

7. **No Assignment of Claims Released**. The Parties represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported, to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or right released and discharged in this Agreement.

8. **No Rehire**. Plaintiffs agree and acknowledge that they will not seek employment in any capacity with the Company, or any business owned or operated by the Company, at any time in the future, and that the Company has no obligation to rehire Plaintiffs, and that the Company's failure or refusal to hire Plaintiffs shall not be deemed retaliation. The Company agrees that should any of the Plaintiffs apply for employment or become employed by the Company, such application or employment shall not constitute a breach of this Agreement. Rather, the remedy is that the Company or any of its parents, subsidiaries or affiliates shall have no obligation to hire that party or otherwise shall terminate that party's employment.

9. **Confidentiality; No Disparaging Comments**.

a. Plaintiffs agrees that they will not disclose or discuss the fact of or the terms of the Agreement with any other person except (1) to the extent necessary to report income to or otherwise interact with appropriate taxing and unemployment authorities; (2) to each party's attorney(s) (and attorney's consultants such as Williams & Associates), spouse, tax advisor(s), and accountant(s); (3) in response to requirements of law or a subpoena issued by a state or federal court or any governmental agency; (4) to obtain approval of this Agreement; or (5) to enforce the terms of this Agreement. Moreover, in the event that the Plaintiffs discuss this Agreement with their attorney (or attorney's consultant), accountant, spouse, or tax advisor, it shall be their duty, responsibility, and obligation to direct them not to discuss the terms of this Agreement with any other person.

b. Except in a proceeding to enforce any of the provisions of this Agreement, to seek approval of this Agreement as set forth herein, or as otherwise permitted under this Agreement (i.e., paragraph 9.a. and paragraph 15), absent the prior written consent of the Company, Plaintiffs, or anyone acting on behalf of Plaintiffs, shall not publicize or disclose to any third party, either directly or indirectly, this Agreement or any of the terms or conditions of this Agreement. If any of the Plaintiffs is served with a subpoena or other legal process requiring the production or disclosure of this Agreement or any of its terms or conditions, then, before complying, he will immediately notify the Company and its counsel as provided under paragraph 2.b. of this Agreement. To the extent the Company objects or otherwise wishes to oppose the subpoena or other legal process, it shall be the Company's responsibility to do so at its sole cost and expense. Plaintiffs shall have no obligation whatsoever other than to notify the Company as stated above and shall comply with any subpoena, court order, or other legal process if the Company should not timely file any appropriate motion opposing the subpoena, court order, or



initials

other legal process and staying Plaintiffs' requirement to comply with the subpoena, court order, or other legal process.

        c.      Plaintiffs covenant and agree not to publicize, disseminate or otherwise make statements, or encourage or suggest to others to publicize, disseminate or otherwise make statements, that are in any way negative, disparaging or derogatory regarding the Company.

        d.      Plaintiffs also specifically agree not to contact other employees or former employees or contractors of ALTS for the purpose of suggesting to them in any way (or assisting them in any manner other than as required by court order or subpoena) that they should file a claim of any kind against ALTS, TINKLER, or GOODMAN.  Nothing in this provision or this Agreement prohibits Plaintiffs from testifying truthfully as to their relationship with the Company if subpoenaed to testify in any legal proceeding or before any tribunal or from suggesting the names of attorneys if so contacted.

        e.      Plaintiffs will be responsible for ensuring that any spouse, tax advisor(s), and accountant(s) notified of this Agreement as permitted under paragraph 9.a. above are informed that they must keep the terms of this Agreement confidential.  In the event that any of the Plaintiffs breach this subparagraph, the Company may file a lawsuit against that Plaintiff to enforce this subparagraph.  The prevailing party shall be entitled to attorneys' fees and costs as provided below, as well as an additional Ten Thousand Dollars and No Cents ($10,000.00) as liquidated damages.

        f.      The Company covenants and agrees not to publicize, disseminate or otherwise make statements, or encourage or suggest to others to publicize, disseminate or otherwise make statements, that are in any way negative, disparaging or derogatory regarding the Plaintiffs.

        g.      If the Company is contacted by any prospective or potential employer of any of the Plaintiffs seeking any information about or recommendation for employment of any of the Plaintiffs, the Company's only response will be to confirm the dates of employment, positions held by that party with the Company, if authorized in writing that party's wages, and state words to the effect that the Company's policy precludes releasing any additional information about current or former employees or contractors.

        10.    **The Company's Representations and Warranties**.  As a material inducement to Plaintiffs to enter into this Agreement, the Company hereby represents and warrants to Plaintiffs that the following representations and warranties, as well as the representations and warranties made elsewhere in this Agreement, are as of the date last signed by the Company below true and correct:

        a.      **Financial Records**.  The Company provided to Plaintiffs (through their attorneys Kim Vaughan Lerner LLP) the following information regarding the finances of the Company:  (i) 2010, 2011, 2012, and 2013 tax returns for ALTS; (ii) 2010, 2011, 2012, and 2013 reviewed financial statements of ALTS prepared by Tolley & Hill, PLLC; (iii) 2010, 2011, 2012, and 2013 internal financial statements for ALTS; (iv) an internal interim financial statement for the seven months of January 1, 2014, through July 31, 2014 for ALTS; (v) an explanation regarding the variance between what is reflected on ALTS's tax returns versus what is reflected on the

_____
initials



reviewed financial statements as it relates to "property" (as detailed in the e-mail sent by Brian Gart dated October 7, 2014, on or about 5:37 p.m.); (vi) the ALTS Restructuring Plan as of August 31, 2014; and (vii) the ALTS Reorganization Worksheet as of August 31, 2014 (collectively, all of the documents and information shall be referred to as the "Financial Records"). As of such dates as the Financial Records were provided to Plaintiffs, the Financial Records were prepared in accordance with GAAP throughout the periods covered thereby, presented fairly in all material respects the financial condition of the Company with respect to the business of ALTS, as of such dates and the results of operations of ALTS with respect to its business, for such periods, and were correct and complete and consistent with the books and records of the ALTS (which books and records are correct and complete), as of such dates.

      b.    **Subsequent Events**. Since January 1, 2014, (i) no party (including the Company) has accelerated, terminated, modified, or canceled any agreement, contract, lease, or license (or series of related agreements, contracts, leases, and licenses) relating to the business involving more than $10,000 to which the Company is a party or by which the Company is bound; (ii) the Company has maintained its assets and has made capital expenditures consistent with the business's normal course of operations or as necessary to facilitate the payments due under this Agreement; (iii) the Company has not granted any increase in the base compensation of any of its directors, officers, or salaried employees; (iv) the Company has not made a change in its accounting methods, except as required by GAAP; and (v) the Company has not agreed to do any of the foregoing. Further, since January 1, 2014, there has been no occurrence or disclosure of any event, circumstance or state of facts which has, or would reasonably be expected to have, a material adverse effect on the business, assets, condition (financial or otherwise), operations, operating results, employee relations, or supplier relations of the business conducted by the Company.

      c.    **Accounts Receivable**. Although the Company always makes efforts and will continue to make its best efforts to obtain payment on all accounts receivable, the Company makes no representations and warranties that it has verified the collectability of each account receivable.

      d.    **Reorganization Plan**. The Company has implemented and will continue to use its best efforts to implement changes to its business in order to facilitate the payments due under this Agreement. The changes being implemented include and are not limited to the following: (i) decreases in compensation in the approximate amount of $475,000 in the areas of dispatch services, repairs and maintenance, labor reclassification, and executive team compensation; and (ii) reducing ALTS's auto repair expense by no longer having such work performed by Aventura Automotive, Inc.

      e.    **Closed Businesses**. SRN Auto Body, LLC, and SRN Enterprises, LLC, no longer do any business, have been closed for approximately two years, and will not be reopened (including under another name). Aventura Automotive, Inc., no longer does any business, has been closed recently, and will not be reopened (including under another name).

      f.    **Tax Matters**. The Company has filed all tax returns that that it was required to file. All such tax returns were correct and complete in all material respects. All taxes owed by the Company (whether or not shown on any tax return) have been paid. Other than the State of Florida Department of Revenue audit, which was conducted in 2011 and pertained to the 2009

initials
_____



year, to the Company's knowledge, since January 1, 2007, no claim has been made by an authority in a jurisdiction where the Company does not file tax returns that it is or may be subject to taxation by that jurisdiction. There are no liens on any of the assets of the Company that arose in connection with any failure (or alleged failure) to pay any tax. The Company has withheld and paid all taxes required to have been withheld and paid in connection with amounts paid or owing to any employee, independent contractor, creditor, stockholder, or other third party, and all Forms W-2 and 1099 required with respect thereto have been properly completed and timely filed. There is no dispute or claim concerning any tax liability of the Company either (i) claimed or raised by any authority in writing or (ii) as to which the Company has knowledge based on personal contact with any agent of such authority.

       g.    **Pending or Threatened Actions**. Except for the Contreras Action, the Coelho Action, and the action *Rodney Schatt v. Aventura Limousine & Transportation Service, Inc., and Scott Tinkler*, case number 10-22353-Civ-COOKE/TORRES, there are no actions, suits, proceedings, orders, judgments, decrees, hearings, charges, complaints, claims, demands, notices, or investigations pending, filed, commenced or, to the Company's knowledge, threatened against or relating to the Company (or against any of its shareholders, officers, directors, agents, or employees (in each case, in their capacity as such)), or its assets, at law or in equity, or before any or by any federal, state, municipal, or other governmental department, commission, board, bureau, agency, or instrumentality, domestic or foreign, and to the knowledge of the Company there is no reasonable basis known for any of the foregoing. The Company is not subject to any outstanding order, judgment, or decree issued by any court or quasi-judicial or administrative agency of any federal, state, local, or foreign jurisdiction or any arbitrator (other than the final judgment entered in the Contreras Action).

       h.    **Key Employees**. To the knowledge of the Company, no executive, key employee, or group of employees of the Company has any plans to terminate employment with the Company.

       i.    **Consideration**. The Company, which again specifically includes TINKLER, GOODMAN, ALBS, and AWTS, acknowledges and agrees that the forbearance and releases provided by the Plaintiffs and the other obligations under this Agreement provided by the Plaintiffs constitute good and valid consideration and more than reasonably equivalent value in exchange for the obligations of the Company pursuant to this Agreement.

       j.    **No Bankruptcy**. The Company does not intend to commence any proceeding or file any petition seeking relief under Title 11 of the United States Code, as now constituted or hereafter amended, or any other federal, state or foreign bankruptcy, insolvency, receivership or similar law within ninety days of the date that the last federal district court approves this Agreement. To the knowledge of the Company, no creditor has threatened or claimed any default under any agreement between the creditor and the Company from August 14, 2014, through the date of this Agreement. To the knowledge of the Company, no creditor has threatened an involuntary proceeding seeking relief in respect of any of the Company, or of a substantial part of the property or assets of any of the Company, under Title 11 of the United States Code, as now constituted or hereafter amended, or any other federal, state or foreign bankruptcy, insolvency, receivership or similar law.

---------------
initials



11.   **Reporting, Access, & Notice**.  The Company will provide Plaintiffs' attorneys and/or Plaintiffs' and Plaintiffs' designated accountants or consultants (a) with the same types of financial statements as set forth in Paragraph 10.a (e.g., tax returns, including all schedules and attachments, reviewed and audited financial statements, profit and loss statements, etc.) upon reasonable notice provided by Plaintiffs and/or Plaintiffs' attorneys, (b) to visit and inspect any of the properties of the Company upon reasonable prior notice during normal business hours, and (c) discuss the affairs, finances, and accounts of the Company with the officers, general partners, key employees, suppliers, attorneys, and independent accountants of the Company; provided that Plaintiffs shall not contact the Company's suppliers without the prior written consent of the Company, upon notice to counsel, which consent shall not be unreasonably withheld, and provided that all such information received shall be subject to the Confidentiality and Non-Disclosure Agreement, dated September 17, 2014.  In the event ALTS, ALBS, and/or AWTS sell, lease, transfer, assign, or encumber, lien, or pledge any of its/their assets, tangible or intangible, with an aggregate value greater than $100,000 (other than the sub-leasing of vehicles and limousine permits as identified in the ALTS Restructuring Plan as of August 31, 2014, and the ALTS Reorganization Worksheet as of August 31, 2014) and/or in the event TINKLER and/or GOODMAN sell, lease, transfer, assign, or encumber, lien, or pledge (so as to make Plaintiffs subordinate or junior to any creditor) any shares, stockholder interests, and/or membership interests they have in any entity related to or affiliated with the Company, the Company shall provide written notice by e-mail or facsimile notice to Plaintiffs' counsel, Brian L. Lerner (blerner@kvllaw.com or 954.527.1116).  Such notice must be received by Plaintiffs' counsel no later than ten business days before the execution of any documents that would result in the sale, lease, transfer, assignment, or encumbrance, lien, or pledge.  The Company shall provide Plaintiffs' counsel written notice of the completion the sale, lease, transfer, assignment, or encumbrance, lien, or pledge, with such written notice provided within three days after the execution of any documents that would result in the sale, lease, transfer, assignment, or encumbrance, lien, or pledge.  Rejection or other refusal by the addressee to accept or the inability to deliver because of a changed address, e-mail address, or facsimile number of which no notice was given shall be deemed to be the delivery and receipt of the notice sent.

12.   **Limited Participation of ALBS**.  ALBS shall participate in the payment of the Company's obligations under this Agreement as a joint primary obligor, but in the Event of Default and execution on a final judgment and/or amended final judgment, the Plaintiffs and/or Kim Vaughan Lerner LLP's rights to payment and collection shall be limited as follows:  with respect to ALBS, forty-nine percent (49%) of any proceeds/assets collected from ALBS by the Plaintiffs and/or Kim Vaughan Lerner LLP in connection with collection efforts on a final judgment and/or amended final judgment shall be paid to or reserved for the benefit of Ronald Sorci, with the Plaintiffs and/or Kim Vaughan Lerner LLP being permitted to retain the remainder of all other proceeds/assets collected (that is, fifty-one percent (51%)) to satisfy the final judgment and/or amended final judgment.  In no event shall Ronald Sorci be deemed liable for the obligations of the Company under this Agreement.

13.   **Voluntary Waiver**.  The Parties understand, agree, covenant, represent, and warrant that they have carefully read and understand this Agreement (and/or have had this Agreement translated and explained to them, if applicable), and agree that none of the other Parties to this Agreement have made any representations other than those contained herein.  The Parties

initials
_____



also acknowledge that they enter into this Agreement voluntarily, without any pressure or coercion, and with full knowledge of its significance, and that it constitutes a **FULL AND ABSOLUTE SETTLEMENT AND BAR AS TO ANY AND ALL CLAIMS THEY HAVE, HAD, OR MAY NOW HAVE AGAINST EACH OTHER.** The Parties further acknowledge that they have consulted with an attorney of their choosing prior to signing this Agreement.

14.   **Governing Law.** The terms of this Agreement will be construed in accordance with the laws of the State of Florida, and where applicable, federal law.

15.   **Agreement Contingent upon Court Approval.** The Parties agree and acknowledge that where applicable, this Agreement will be submitted for review and approval by the Court in accordance with *Lynn's Food Stores, Inc. v. United States,* 679 F.2d l350 (11th Cir. 1982), and may need to be filed with the Court if so ordered.

16.   **Agreement Not to Be Used as Evidence.** This Agreement shall not be admissible as evidence in any proceeding except (a) as required to obtain approval by the federal district court in accordance with the holding in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d l350 (11th Cir. 1982), (b) to enforce this Agreement, (c) to assert a claim that this Agreement has been breached, (d) one in which a party to this Agreement seeks contribution for amounts paid under this Agreement, (e) one in a which a party is compelled by legal process (i.e., a subpoena) to produce this Agreement and to which the other parties have not objected and obtained an order staying any requirement to comply with the legal process, or (f) one in which a court or administrative agency of competent jurisdiction orders a party to produce this Agreement.

17.   **Enforcement of Agreement**. The Parties agree that the respective federal district courts shall retain jurisdiction to enforce the terms of this Agreement, unless said federal district court refuses to retain jurisdiction, in which case this Agreement shall be enforceable in the appropriate court in Miami-Dade County, Florida.

18.   **Attorneys' Fees and Costs**. In the event of a legal action or other proceeding arising under this Agreement or a dispute regarding any alleged breach, default, claim, or misrepresentation arising out of this Agreement, whether or not a lawsuit is filed, the prevailing party shall be entitled to recover his/its reasonable attorneys' fees and costs, whether incurred before suit, during suit, or at the appellate level. The prevailing party shall also be entitled to recover any attorneys' fees and costs incurred in litigating the entitlement to attorneys' fees and costs, as well as in determining or quantifying the amount of recoverable attorneys' fees and costs. The reasonable costs to which the prevailing party is entitled shall include costs that are taxable under any applicable statute, rule, or guideline, as well as non-taxable costs, including, but not limited to, costs of investigation, copying costs, electronic discovery costs, mailing and delivery charges, information technology support charges, consultant and expert witness fees, travel expenses, court reporter fees, and mediator fees, regardless of whether such costs are otherwise taxable.

19.   **Entire Agreement; Modification**. This Agreement constitutes the entire agreement among the Parties with respect to the subject matter hereof, and supersedes, cancels, and terminates all prior oral and written understandings and agreements as among them. There are no inducements, representations, warranties, or understandings that do not appear within the

_____
initials



Page 14 of 28

terms and provisions of this Agreement.  No modification or waiver of any of the terms of the Agreement shall be valid unless in writing and executed by all of the Parties effected thereto with the same formality as this Agreement.  No waiver of any breach, violation, dispute, or default hereunder shall be deemed a waiver of any subsequent breach, violation, dispute, or default of the similar or dissimilar nature.  No course of dealing shall be effective to amend, modify, or change any provision of this Agreement.

20.     **Severability**.  If any provision of this Agreement or the application thereof is held invalid, such invalidation shall not affect other provisions or application of this Agreement and to this end the provisions of this Agreement are declared severable.

21.     **Binding Effect**.  This Agreement shall be binding upon and shall inure to the benefit of the Parties' representatives, agents, successors, assigns, heirs, attorneys, affiliates, and predecessors.

22.     **Parties Represented by Counsel**.  This Agreement is not to be construed against any party.  All Parties were represented by counsel and participated in the drafting of this Agreement.

23.     **Execution; Authorization**.  Each individual signing this Agreement warrants and represents that he has the full authority and is duly authorized and empowered to execute this Agreement on behalf of the party/parties for which he signs.  This Agreement can be executed in counterparts.  An executed version of this Agreement, if transmitted by e-mail or facsimile, shall be effective and binding as if it were the originally executed document.

**[REMAINDER LEFT BLANK; SIGNATURES ON FOLLOWING PAGE]**

_____
initials



AGREED TO AND ACCEPTED:

_Jorge Contreras_ _10/28/14_          _____
JORGE CONTRERAS          date          SCOTT TINKLER          date

_____ _10/30/14_          _____
ROBSON COELHO          date          NEIL GOODMAN          date

AVENTURA LIMO &
BUS SERVICE, INC.

By:_____
                                          date

Print Name:_____

Title:_____

AVENTURA LIMOUSINE &
TRANSPORTATION SERVICE, INC.

By:_____
                                          date

Print Name:_____

Title:_____

AVENTURA WORLDWIDE
TRANSPORTATION SERVICE, INC.

By:_____
                                          date

Print Name:_____

Title:_____

_____
initials

AGREED TO AND ACCEPTED:

_____
JORGE CONTRERAS          date

_____
SCOTT TINKLER          date

_____
ROBSON COELHO          date

_____
NEIL GOODMAN          date

AVENTURA LIMO &
BUS SERVICE, INC.

By:_____
          date

Print Name: NEIL GOODMAN

Title: FOUNDER / PRESIDENT

AVENTURA LIMOUSINE &
TRANSPORTATION SERVICE, INC.

By:_____
          date

Print Name: NEIL GOODMAN

Title: FOUNDER

AVENTURA WORLDWIDE
TRANSPORTATION SERVICE, INC.

By:_____
          date

Print Name: NEIL GOODMAN

Title: Founder

_____
initials

| Addendum 1 - Payments Owed to Jorge Contreras ($190,111.45) | | |
|---|---|---|
| Payment Number | Amount Subject to Withholdings and IRS Form W-2 | Amount Subject to No Withholdings and IRS Form 1099 |
| Down Payment | $47,527.86 | $47,527.87 |
| 1 | $792.14 | $792.14 |
| 2 | $792.14 | $792.14 |
| 3 | $792.14 | $792.14 |
| 4 | $792.14 | $792.14 |
| 5 | $792.14 | $792.14 |
| 6 | $792.14 | $792.14 |
| 7 | $792.13 | $792.13 |
| 8 | $792.13 | $792.13 |
| 9 | $792.13 | $792.13 |
| 10 | $792.13 | $792.13 |
| 11 | $792.13 | $792.13 |
| 12 | $792.13 | $792.13 |
| 13 | $792.13 | $792.13 |
| 14 | $792.13 | $792.13 |
| 15 | $792.13 | $792.13 |
| 16 | $792.13 | $792.13 |
| 17 | $792.13 | $792.13 |
| 18 | $792.13 | $792.13 |
| 19 | $792.13 | $792.13 |
| 20 | $792.13 | $792.13 |
| 21 | $792.13 | $792.13 |
| 22 | $792.13 | $792.13 |
| 23 | $792.13 | $792.13 |
| 24 | $792.13 | $792.13 |
| 25 | $792.13 | $792.13 |
| 26 | $792.13 | $792.13 |
| 27 | $792.13 | $792.13 |
| 28 | $792.13 | $792.13 |
| 29 | $792.13 | $792.13 |
| 30 | $792.13 | $792.13 |
| 31 | $792.13 | $792.13 |
| 32 | $792.13 | $792.13 |
| 33 | $792.13 | $792.13 |
| 34 | $792.13 | $792.13 |
| 35 | $792.13 | $792.13 |



| Addendum 1 - Payments Owed to Jorge Contreras ($190,111.45) | | |
|---|---|---|
| Payment Number | Amount Subject to Withholdings and IRS Form W-2 | Amount Subject to No Withholdings and IRS Form 1099 |
| 36 | $792.13 | $792.13 |
| 37 | $792.13 | $792.13 |
| 38 | $792.13 | $792.13 |
| 39 | $792.13 | $792.13 |
| 40 | $792.13 | $792.13 |
| 41 | $792.13 | $792.13 |
| 42 | $792.13 | $792.13 |
| 43 | $792.13 | $792.13 |
| 44 | $792.13 | $792.13 |
| 45 | $792.13 | $792.13 |
| 46 | $792.13 | $792.13 |
| 47 | $792.13 | $792.13 |
| 48 | $792.13 | $792.13 |
| 49 | $792.13 | $792.13 |
| 50 | $792.13 | $792.13 |
| 51 | $792.13 | $792.13 |
| 52 | $792.13 | $792.13 |
| 53 | $792.13 | $792.13 |
| 54 | $792.13 | $792.13 |
| 55 | $792.13 | $792.13 |
| 56 | $792.13 | $792.13 |
| 57 | $792.13 | $792.13 |
| 58 | $792.13 | $792.13 |
| 59 | $792.13 | $792.13 |
| 60 | $792.13 | $792.13 |
| SUB-TOTAL: | $95,055.72 | $95,055.73 |
| GRAND TOTAL: | $190,111.45 | |

_____
initials

Page 18 of 28

JC.

| Addendum 1 - Payments Owed to Jorge Contreras If Prepayment Is Received ($174,718.73) | | |
|---|---|---|
| Payment Number | Amount Subject to Withholdings and IRS Form W-2 | Amount Subject to No Withholdings and IRS Form 1099 |
| Down Payment | $47,527.86 | $47,527.87 |
| 1 | $792.14 | $792.14 |
| 2 | $792.14 | $792.14 |
| 3 | $792.14 | $792.14 |
| 4 | $792.14 | $792.14 |
| 5 | $792.14 | $792.14 |
| 6 | $792.14 | $792.14 |
| 7 | $792.13 | $792.14 |
| 8 | $792.13 | $792.13 |
| 9 | $792.13 | $792.13 |
| 10 | $792.13 | $792.13 |
| 11 | $792.13 | $792.13 |
| 12 | $792.13 | $792.13 |
| 13 | $792.13 | $792.13 |
| 14 | $792.13 | $792.13 |
| 15 | $792.13 | $792.13 |
| 16 | $792.13 | $792.13 |
| 17 | $792.13 | $792.13 |
| 18 | $792.13 | $792.13 |
| 19 | $792.13 | $792.13 |
| 20 | $792.13 | $792.13 |
| 21 | $792.13 | $792.13 |
| 22 | $792.13 | $792.13 |
| 23 | $792.13 | $792.13 |
| 24 | $792.13 | $792.13 |
| Prepayment | $7,696.36 | $7,696.36 |
| 25 | $364.56 | $364.56 |
| 26 | $364.56 | $364.56 |
| 27 | $364.56 | $364.56 |
| 28 | $364.56 | $364.56 |
| 29 | $364.56 | $364.56 |
| 30 | $364.56 | $364.56 |
| 31 | $364.56 | $364.56 |
| 32 | $364.56 | $364.56 |
| 33 | $364.56 | $364.56 |



| Addendum 1 - Payments Owed to Jorge Contreras If Prepayment Is Received ($174,718.73) | | |
|---|---|---|
| Payment Number | Amount Subject to Withholdings and IRS Form W-2 | Amount Subject to No Withholdings and IRS Form 1099 |
| 34 | $364.56 | $364.56 |
| 35 | $364.56 | $364.56 |
| 36 | $364.56 | $364.56 |
| 37 | $364.56 | $364.56 |
| 38 | $364.56 | $364.56 |
| 39 | $364.56 | $364.56 |
| 40 | $364.56 | $364.55 |
| 41 | $364.55 | $364.55 |
| 42 | $364.55 | $364.55 |
| 43 | $364.55 | $364.55 |
| 44 | $364.55 | $364.55 |
| 45 | $364.55 | $364.55 |
| 46 | $364.55 | $364.55 |
| 47 | $364.55 | $364.55 |
| 48 | $364.55 | $364.55 |
| 49 | $364.55 | $364.55 |
| 50 | $364.55 | $364.55 |
| 51 | $364.55 | $364.55 |
| 52 | $364.55 | $364.55 |
| 53 | $364.55 | $364.55 |
| 54 | $364.55 | $364.55 |
| 55 | $364.55 | $364.55 |
| 56 | $364.55 | $364.55 |
| 57 | $364.55 | $364.55 |
| 58 | $364.55 | $364.55 |
| 59 | $364.55 | $364.55 |
| 60 | $364.55 | $364.55 |
| SUB-TOTAL: | $87,359.36 | $87,359.37 |
| GRAND TOTAL: | $174,718.73 | |

_____
initials

JC

| Addendum 2 - Payments Owed to Robson Coelho ($93,637.61) | | |
|---|---|---|
| Payment Number | Amount Subject to Withholdings and IRS Form W-2 | Amount Subject to No Withholdings and IRS Form 1099 |
| Down Payment | $15,606.27 | $15,606.27 |
| 1 | $520.21 | $520.21 |
| 2 | $520.21 | $520.21 |
| 3 | $520.21 | $520.21 |
| 4 | $520.21 | $520.21 |
| 5 | $520.21 | $520.21 |
| 6 | $520.21 | $520.21 |
| 7 | $520.21 | $520.21 |
| 8 | $520.21 | $520.21 |
| 9 | $520.21 | $520.21 |
| 10 | $520.21 | $520.21 |
| 11 | $520.21 | $520.21 |
| 12 | $520.21 | $520.21 |
| 13 | $520.21 | $520.21 |
| 14 | $520.21 | $520.21 |
| 15 | $520.21 | $520.21 |
| 16 | $520.21 | $520.21 |
| 17 | $520.21 | $520.21 |
| 18 | $520.21 | $520.21 |
| 19 | $520.21 | $520.21 |
| 20 | $520.21 | $520.21 |
| 21 | $520.21 | $520.21 |
| 22 | $520.21 | $520.21 |
| 23 | $520.21 | $520.21 |
| 24 | $520.21 | $520.21 |
| 25 | $520.21 | $520.21 |
| 26 | $520.21 | $520.21 |
| 27 | $520.21 | $520.21 |
| 28 | $520.21 | $520.21 |
| 29 | $520.21 | $520.21 |
| 30 | $520.21 | $520.21 |
| 31 | $520.21 | $520.21 |
| 32 | $520.21 | $520.21 |
| 33 | $520.21 | $520.21 |
| 34 | $520.21 | $520.21 |
| 35 | $520.21 | $520.21 |



| Addendum 2 - Payments Owed to Robson Coelho ($93,637.61) | | |
|---|---|---|
| Payment Number | Amount Subject to Withholdings and IRS Form W-2 | Amount Subject to No Withholdings and IRS Form 1099 |
| 36 | $520.21 | $520.21 |
| 37 | $520.21 | $520.21 |
| 38 | $520.21 | $520.21 |
| 39 | $520.21 | $520.21 |
| 40 | $520.21 | $520.21 |
| 41 | $520.21 | $520.21 |
| 42 | $520.21 | $520.21 |
| 43 | $520.21 | $520.21 |
| 44 | $520.21 | $520.21 |
| 45 | $520.21 | $520.21 |
| 46 | $520.21 | $520.21 |
| 47 | $520.21 | $520.21 |
| 48 | $520.21 | $520.21 |
| 49 | $520.21 | $520.21 |
| 50 | $520.21 | $520.21 |
| 51 | $520.21 | $520.21 |
| 52 | $520.21 | $520.21 |
| 53 | $520.21 | $520.21 |
| 54 | $520.20 | $520.21 |
| 55 | $520.20 | $520.20 |
| 56 | $520.20 | $520.20 |
| 57 | $520.20 | $520.20 |
| 58 | $520.20 | $520.20 |
| 59 | $520.20 | $520.20 |
| 60 | $520.20 | $520.20 |
| SUB-TOTAL: | $46,818.80 | $46,818.81 |
| GRAND TOTAL: | $93,637.61 | |

_____
initials

Page 22 of 28



| Addendum 2 - Payments Owed to Robson Coelho If Prepayment Is Received ($86,056.07) | | |
|---|---|---|
| Payment Number | Amount Subject to Withholdings and IRS Form W-2 | Amount Subject to No Withholdings and IRS Form 1099 |
| Down Payment | $15,606.27 | $15,606.27 |
| 1 | $780.32 | $780.32 |
| 2 | $780.32 | $780.32 |
| 3 | $780.32 | $780.32 |
| 4 | $780.32 | $780.32 |
| 5 | $780.32 | $780.32 |
| 6 | $780.32 | $780.32 |
| 7 | $780.32 | $780.32 |
| 8 | $780.32 | $780.32 |
| 9 | $780.32 | $780.32 |
| 10 | $780.32 | $780.32 |
| 11 | $780.32 | $780.32 |
| 12 | $780.32 | $780.32 |
| 13 | $780.32 | $780.32 |
| 14 | $780.32 | $780.32 |
| 15 | $780.32 | $780.32 |
| 16 | $780.32 | $780.32 |
| 17 | $780.32 | $780.32 |
| 18 | $780.32 | $780.32 |
| 19 | $780.32 | $780.32 |
| 20 | $780.32 | $780.32 |
| 21 | $780.31 | $780.32 |
| 22 | $780.31 | $780.31 |
| 23 | $780.31 | $780.31 |
| 24 | $780.31 | $780.31 |
| Prepayment | $3,790.77 | $3,790.77 |
| 25 | $136.21 | $136.21 |
| 26 | $136.21 | $136.21 |
| 27 | $136.21 | $136.21 |
| 28 | $136.21 | $136.21 |
| 29 | $136.21 | $136.21 |
| 30 | $136.21 | $136.21 |
| 31 | $136.21 | $136.21 |
| 32 | $136.21 | $136.21 |
| 33 | $136.21 | $136.21 |

Page **23** of **28**



| Addendum 2 – Payments Owed to Robson Coelho If Prepayment Is Received ($86,056.07) | | |
|---|---|---|
| Payment Number | Amount Subject to Withholdings and IRS Form W-2 | Amount Subject to No Withholdings and IRS Form 1099 |
| 34 | $136.21 | $136.21 |
| 35 | $136.21 | $136.21 |
| 36 | $136.21 | $136.21 |
| 37 | $136.21 | $136.21 |
| 38 | $136.21 | $136.21 |
| 39 | $136.21 | $136.21 |
| 40 | $136.20 | $136.20 |
| 41 | $136.20 | $136.20 |
| 42 | $136.20 | $136.20 |
| 43 | $136.20 | $136.20 |
| 44 | $136.20 | $136.20 |
| 45 | $136.20 | $136.20 |
| 46 | $136.20 | $136.20 |
| 47 | $136.20 | $136.20 |
| 48 | $136.20 | $136.20 |
| 49 | $136.20 | $136.20 |
| 50 | $136.20 | $136.20 |
| 51 | $136.20 | $136.20 |
| 52 | $136.20 | $136.20 |
| 53 | $136.20 | $136.20 |
| 54 | $136.20 | $136.20 |
| 55 | $136.20 | $136.20 |
| 56 | $136.20 | $136.20 |
| 57 | $136.20 | $136.20 |
| 58 | $136.20 | $136.20 |
| 59 | $136.20 | $136.20 |
| 60 | $136.20 | $136.20 |
| SUB-TOTAL: | $43,028.03 | $43,028.04 |
| GRAND TOTAL: | $86,056.07 | |

_____
initials

Page 24 of 28

| Addendum 3 - Payments Owed to Kim Vaughan Lerner LLP ($392,474.71) | |
| --- | --- |
| Payment Number | Amount Subject to No Withholdings and IRS Form 1099 |
| 1 | $6,541.25 |
| 2 | $6,541.25 |
| 3 | $6,541.25 |
| 4 | $6,541.25 |
| 5 | $6,541.25 |
| 6 | $6,541.25 |
| 7 | $6,541.25 |
| 8 | $6,541.25 |
| 9 | $6,541.25 |
| 10 | $6,541.25 |
| 11 | $6,541.25 |
| 12 | $6,541.25 |
| 13 | $6,541.25 |
| 14 | $6,541.25 |
| 15 | $6,541.25 |
| 16 | $6,541.25 |
| 17 | $6,541.25 |
| 18 | $6,541.25 |
| 19 | $6,541.25 |
| 20 | $6,541.25 |
| 21 | $6,541.25 |
| 22 | $6,541.25 |
| 23 | $6,541.25 |
| 24 | $6,541.25 |
| 25 | $6,541.25 |
| 26 | $6,541.25 |
| 27 | $6,541.25 |
| 28 | $6,541.25 |
| 29 | $6,541.25 |
| 30 | $6,541.25 |
| 31 | $6,541.25 |
| 32 | $6,541.25 |
| 33 | $6,541.25 |
| 34 | $6,541.25 |
| 35 | $6,541.25 |

Page **25** of **28**



| Addendum 3 - Payments Owed to Kim Vaughan Lerner LLP ($392,474.71) | |
| --- | --- |
| **Payment Number** | **Amount Subject to No Withholdings and IRS Form 1099** |
| 36 | $6,541.25 |
| 37 | $6,541.25 |
| 38 | $6,541.25 |
| 39 | $6,541.25 |
| 40 | $6,541.25 |
| 41 | $6,541.25 |
| 42 | $6,541.25 |
| 43 | $6,541.25 |
| 44 | $6,541.25 |
| 45 | $6,541.25 |
| 46 | $6,541.25 |
| 47 | $6,541.25 |
| 48 | $6,541.25 |
| 49 | $6,541.25 |
| 50 | $6,541.25 |
| 51 | $6,541.25 |
| 52 | $6,541.25 |
| 53 | $6,541.25 |
| 54 | $6,541.25 |
| 55 | $6,541.25 |
| 56 | $6,541.25 |
| 57 | $6,541.25 |
| 58 | $6,541.25 |
| 59 | $6,541.25 |
| 60 | $6,541.25 |
| **GRAND TOTAL:** | $392,474.71 |

_____
initials

Page 26 of 28

| Addendum 3 - Payments Owed to Kim Vaughan Lerner LLP If Prepayment Is Received ($363,404.53) | |
|---|---|
| Payment Number | Amount Subject to No Withholdings and IRS Form 1099 |
| 1 | $6,541.25 |
| 2 | $6,541.25 |
| 3 | $6,541.25 |
| 4 | $6,541.25 |
| 5 | $6,541.25 |
| 6 | $6,541.25 |
| 7 | $6,541.25 |
| 8 | $6,541.25 |
| 9 | $6,541.25 |
| 10 | $6,541.25 |
| 11 | $6,541.25 |
| 12 | $6,541.25 |
| 13 | $6,541.25 |
| 14 | $6,541.25 |
| 15 | $6,541.25 |
| 16 | $6,541.25 |
| 17 | $6,541.25 |
| 18 | $6,541.25 |
| 19 | $6,541.25 |
| 20 | $6,541.25 |
| 21 | $6,541.25 |
| 22 | $6,541.25 |
| 23 | $6,541.25 |
| 24 | $6,541.25 |
| Prepayment | $29,070.19 |
| 25 | $4,926.24 |
| 26 | $4,926.24 |
| 27 | $4,926.24 |
| 28 | $4,926.24 |
| 29 | $4,926.24 |
| 30 | $4,926.24 |
| 31 | $4,926.24 |
| 32 | $4,926.24 |
| 33 | $4,926.24 |
| 34 | $4,926.24 |
| 35 | $4,926.24 |

Page **27** of **28**



JC

| Addendum 3 - Payments Owed to Kim Vaughan Lerner LLP If Prepayment Is Received ($363,404.53) | |
|---|---|
| Payment Number | Amount Subject to No Withholdings and IRS Form 1099 |
| 36 | $4,926.24 |
| 37 | $4,926.24 |
| 38 | $4,926.24 |
| 39 | $4,926.24 |
| 40 | $4,926.24 |
| 41 | $4,926.24 |
| 42 | $4,926.24 |
| 43 | $4,926.23 |
| 44 | $4,926.23 |
| 45 | $4,926.23 |
| 46 | $4,926.23 |
| 47 | $4,926.23 |
| 48 | $4,926.23 |
| 49 | $4,926.23 |
| 50 | $4,926.23 |
| 51 | $4,926.23 |
| 52 | $4,926.23 |
| 53 | $4,926.23 |
| 54 | $4,926.23 |
| 55 | $4,926.23 |
| 56 | $4,926.23 |
| 57 | $4,926.23 |
| 58 | $4,926.23 |
| 59 | $4,926.23 |
| 60 | $4,926.23 |
| GRAND TOTAL: | $363,404.53 |

_____
initials

Page 28 of 28

JC